30 C.C.P.A. (Patents)

### In re KOKATNUR et al.
### Patent Appeal No. 4605.

Court of Customs and Patent Appeals.

May 3, 1943.

Frederic P. Warfield, of New York City, for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

The application for patent, three claims of which (numbered 2, 4, and 7) are here involved, relates to "Lubricant Greases."

Nine claims for method of making lubricant grease and two product claims in which the grease is defined by appellants' process of making it are listed in the record as allowed.

The three claims on appeal are product claims. They were rejected by the examiner on prior art. Upon appeal to the Board of Appeals it affirmed the examiner's decision and the instant appeal to this court was taken.

The appealed claims read:

"2. A lubricant grease which is neither substantially alkaline nor acid in reaction characterized by the fact that when distilled with at least an equal volume of kerosene, it congeals to a homogeneous, non-fibrous pasty consistency without separation of its constituent phases."

"4. An anhydrous grease which is neither substantially alkaline nor acid in reaction for use at high lubricant temperatures and pressure, consisting of mineral lubricating oil, homogeneously mixed with anhydrous soap and characterized by the fact that it is stable when distilled with at least an equal volume of kerosene and congeals to a homogeneous, non-fibrous pasty consistency without separation of its constituent phases."

"7. A lubricant grease which is neither substantially alkaline nor acid in reaction and which includes lubricant oils homogeneously combined with an anhydrous soap and which is characterized by the fact that it will liberate no more than 1/10th of 1% of water when distilled with at least an equal volume of kerosene and which is stable when so distilled and congeals to a homogeneous, non-fibrous pasty consistency without separation of its constituent phases."

The references relied upon are the following patents: Kokatnur, 1,753,659, Apr. 8, 1930; Lauer, 1,912,001, May 30, 1933; Kaufman, 1,971,750, Aug. 28, 1934.

It will be observed that the inventor in the first cited patent is one of the joint applicants in the instant case. Two affidavits made by him were introduced during the prosecution of the joint application in the Patent Office to which we shall later allude.

The nature of the product involved in the appealed claims is evident from the claims themselves, but we quote the following from the brief for appellants: "The Board of Appeals has apparently taken the position that appellants are claiming an anhydrous grease, although claim 4 is the only one which specifies 'an anhydrous

grease.' What appellants are claiming is a lubricating grease which upon being distilled with at least an equal volume of kerosene will congeal to an homogeneous, non-fibrous pasty consistency without separation of its constituent phases. The question then is whether the greases produced by Lauer and Kaufmann will congeal to an homogeneous non-fibrous pasty consistency without separation of their constituent phases when distilled with an equal volume of kerosene."

In his statement, following the appeal to the board, the examiner described the disclosures of the respective references as follows:

"The patent to Kokatnur discloses the preparation of an anhydrous soap gel by distilling a mixture of a soap forming ingredient, an alkali and a hydrocarbon which boils at a temperature above that of water. There is no statement in the patent that the grease has only .1% moisture therein, but since the same process is used it would inherently have this low moisture content.

"In lines 8 to 11 inclusive of page 2 of this patent there is a disclosure of using this soap gel in the preparation of a mineral oil grease.

"The Kaufman patent discloses the preparation of an anhydrous grease. According to the analyses of the greases set out in examples 1 to 8 inclusive on pages 3 and 4 of this patent there is produced a grease that is anhydrous and free of free alkali.

"The Lauer patent discloses the preparation of a sodium, calcium, aluminum grease which would be substantially anhydrous and substantially neutral in reaction. Attention is directed to lines 9 to 25 inclusive of page 3 of this patent for a disclosure of a dehydrated grease."

The accuracy of the foregoing description does not seem to be challenged by appellants, but it is argued, in substance, with respect to the Kokatnur patent, that it is for an anhydrous soap gel, and does not disclose either a lubricating grease or a method by which lubricating grease could be made from such soap gel.

Referring to an example (I) given in the Kokatnur patent, appellants' brief before us states: " * * * the hydrocarbon diluent, used to remove the water, is 'high-flash mineral oil such as high-flash and high-boiling petroleum oils or any motor oil.' Such an oil would be kerosene or

gasoline and would not be lubricating. There is no disclosure of adding lubricating oil to take the place of it, and nothing in the patent would indicate that this could be done."

It is pointed out in the brief of the Solicitor for the Patent Office that the Kokatnur patent states: "Such gels are useful as lubricating soap-greases and, due to the absence of water and its hydrolozing action on soap, have no chemical action on metal surfaces."

The foregoing appears in the text of example I referred to, and it was alluded to, although not quoted, by the examiner, who seems to have construed it as disclosing using the soap gel in the preparation of a mineral oil grease.

If the statement of the patent is to be taken at its face value, it seems to us to be more than a teaching of the use of the soap gel as an ingredient in the preparation of some other article. The particular part of the statement to which we allude is "Such gels·are useful *as* lubricating soap-greases." (Italics supplied.) That statement must have been intended to mean that the soap gels in and of themselves are useful as lubricating greases. It, therefore, seems to us that the rejection based upon the Kokatnur patent alone was proper.

However, we have considered the other references.

We quote from the examiner's statement the following paragraphs:

"Claims 2, 4 and 7 were rejected as being met by the patent to Kaufman. The grease of this reference, according to the analyses set out in the eight examples in this patent has no water present. Moreover these same analyses of the greases in these eight examples do not have present any substantial amount of alkali in the grease compositions. Example 6 states the grease to be neutral. Owing to the lack of moisture and alkali in the grease composition or compositions of this patent it is the Examiner's belief that the grease of this reference inherently possesses the properties of being homogeneous, stable, nonfibrous, and of pasty consistency.

\*　\*　\*　\*　\*

"Claims 2, 4 and 7 were rejected as being substantially met by the Lauer patent. This patent teaches a process whereby there is produced a grease which is free of water. Also this grease, is considered as being neutral, since there is no in-

dication from the patent of the presence of alkali in the grease composition. The Examiner also considers the grease as inherently possessing the properties called for in the claims, that is, of being homogeneous, stable, and of a non-fibrous consistency."

We quote also the following from the decision of the board: "It appears quite clear that each of the [reference] citations asserts that the soap and the final product are anhydrous. Applicants directly traverse this feature and rely upon application of a particular test devised by themselves for proving that the citations do not in fact disclose a product that is anhydrous. The particular test applied by applicants consists in mixing some of the material with kerosene and distilling off such kerosene. It is applicants' claim as supported by affidavits that test of the products of the patent produce separation of the grease and lubricant in the residue whereas his product remains homogeneous. This is attributed to the presence of water in the samples of the prior art. We have carefully considered the merits of applicants' contentions but are unable to agree that the Office should allow subsequent claims such as those on appeal which are apparently directly anticipated by what is claimed to be true in prior patents in respect to the product being anhydrous. Each patent, as above noted, seems to assert this fact but attention is called to page 4 of Kaufman which states that the product contains no water. This is among a list of constituents of the grease analyzed down to the fineness of less than 1% as to other constituents. No water as specified by Kaufman would clearly come within applicants' limit of no more than 1/10 of 1%. This would satisfy claim 7. The other two claims are believed satisfied by each of the citations as to mere terms aside from applicants' particular test applied."

In the seventh reason of appeal before us it is alleged that the board "erred in not giving sufficient weight to the affidavits" of Dr. Kokatnur.

We have carefully examined the affidavits referred to.

In the first there is no reference to the Kaufman patent, and no statement that there was any test of grease made by the Lauer process. So far as the affidavit relates to the Lauer reference, the most that can be said of it is that it expresses the

affiant's opinion that the Lauer process could not produce an anhydrous grease "such as is called for by the claims of this application, and such as is produced by my [affiant's] process."

As has been indicated, a number of claims covering the process of appellants stand allowed, together with two product claims in which the product is defined by the process of making it. So to that extent appellants are protected in their monopoly.

They contend, however, that there may be some other method of making grease having the particular characteristics claimed for their product and that, without the allowance of the appealed claims, they do not have the full protection to which they are entitled.

In the second affidavit the affiant stated:

"I have recently produced a lubricating grease in accordance with the teachings of Patent No. 1,971,750 issued to Gus Kaufman, and I have also recently produced a lubricating grease in accordance with the teachings of Patent No. 1,912,001 issued to Carl E. Lauer.

"I have carefully subjected both of these above mentioned greases to the kerosene gelability test described on page 4, lines 1 to 16 of the specification of the above entitled application, and have found that neither of these greases will pass this kerosene gelability test."

In the brief of the Solicitor for the Patent Office it is said:

"This affidavit [the second] states nothing but conclusions. The affiant does not tell what he did but merely says that he followed the teachings of the patents, and he does not produce the results of his tests in order that the Court may determine the nature of the products, but merely gives his opinion that these products did not pass his test. Obviously there is room for much difference of opinion as to whether or not a given material is homogeneous, and the determination of this question should be made by the tribunal trying the case and not by the party submitting the evidence.

"Moreover, Kaufman gives eight specific examples and Lauer describes many modifications of his process. Under these circumstances Kokatnur's statement that he followed the teachings of these patents gives no definite indication as to what he did. Assuming that he found one ex-

ample which did not produce a grease having the desired qualities, this would not prove that the other examples were equally defective. It is submitted, therefore, that the affidavits fall far short of showing that Lauer and Kaufman could not produce greases having less than one-tenth of one percent water content."

It is obvious from the teachings of both Kaufman and Lauer that they desired to eliminate all the water possible and each defined processes for so doing. In Kaufman's analysis of the final product resulting from the process defined in his several examples it is stated "water none." In the Lauer patent, after describing the process by which his product is carried to a stage of reaction, it is said: "The reacted mixture is then preferably passed to a closed kettle or chamber wherein *water* and other undesirable constituents are vaporized and *removed to any desired extent* to produce the desired final product." (Italics supplied.)

At another place in the specification it is said "Any desired proportion of the water vapors evolved may be withdrawn * * *," and it is noted that all the claims have a limitation respecting the withdrawing of undesired vapors to produce the final product. The claims in both the Kaufman and Lauer patents are process claims but the specification of the Lauer patent recites, among other things, that the product is "particularly well adapted to the preparation of high soap content grease such as used for the lubrication of locomotive driving journals."

It may be said further that we find no allegation on the part of appellants that the water content required by the appealed claims (mentioned specifically in claim 7 as 1/10th of 1%) is itself critical. In fact, the specification states: "There appears to be a critical point somewhere between the water-content of the grease of the prior art and the 1/10th of 1% water-content of our new grease. Just where this critical point lies has not been determined as yet, but by 'anhydrous' in the claims, is meant grease whose water-content is below this critical percentage."

Appellants' arguments have been carefully considered. That they have made an invention entitling them to a certain monopoly under the patent laws has been determined by the examiner in the Patent Office, but we agree with the tribunals below that in seeking the appealed claims they are, in view of the teachings of the prior art, seeking a broader monopoly than those laws authorize.

The decision of the board is affirmed.

Affirmed.